UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
NORTHERN DIVISION at COVINGTON

CIVIL ACTION NO. 07-165-GWU

DONNA HERALD, PLAINTIFF,

VS. **MEMORANDUM OPINION**

MICHAEL J. ASTRUE,
COMMISSIONER OF SOCIAL SECURITY, DEFENDANT.

## INTRODUCTION

The plaintiff brought this action to obtain judicial review of an administrative denial of her application for Disability Insurance Benefits (DIB). The appeal is currently before the court on cross-motions for summary judgment.

## APPLICABLE LAW

The Sixth Circuit Court of Appeals has set out the steps applicable to judicial review of Social Security disability benefit cases:

1. Is the claimant currently engaged in substantial gainful activity? If yes, the claimant is not disabled. If no, proceed to Step 2. See 20 C.F.R. 404.1520(b), 416.920(b).

2. Does the claimant have any medically determinable physical or mental impairment(s)? If yes, proceed to Step 3. If no, the claimant is not disabled. See 20 C.F.R. 404.1508, 416.908.

3. Does the claimant have any severe impairment(s)--i.e., any impairment(s) significantly limiting the claimant's physical or mental ability to do basic work activities? If yes, proceed to Step 4. If no, the claimant is not disabled. See 20 C.F.R. 404.1520(c), 404.1521, 416.920(c), 461.921.

1

4. Can the claimant's severe impairment(s) be expected to result in death or last for a continuous period of at least 12 months? If yes, proceed to Step 5. If no, the claimant is not disabled. <u>See</u> 20 C.F.R. 404.920(d), 416.920(d).

5. Does the claimant have any impairment or combination of impairments meeting or equaling in severity an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1 (Listing of Impairments)? If yes, the claimant is disabled. If no, proceed to Step 6. <u>See</u> 20 C.F.R. 404.1520(d), 404.1526(a), 416.920(d), 416.926(a).

6. Can the claimant, despite his impairment(s), considering his residual functional capacity and the physical and mental demands of the work he has done in the past, still perform this kind of past relevant work? If yes, the claimant was not disabled. If no, proceed to Step 7. <u>See</u> 20 C.F.R. 404.1520(e), 416.920(e).

7. Can the claimant, despite his impairment(s), considering his residual functional capacity, age, education, and past work experience, do other work--i.e., any other substantial gainful activity which exists in the national economy? If yes, the claimant is not disabled. <u>See</u> 20 C.F.R. 404.1505(a), 404.1520(f)(1), 416.905(a), 416.920(f)(1).

<u>Garner v. Heckler</u>, 745 F.2d 383, 387 (6th Cir. 1984).

Applying this analysis, it must be remembered that the principles pertinent to the judicial review of administrative agency action apply. Review of the Commissioner's decision is limited in scope to determining whether the findings of fact made are supported by substantial evidence. <u>Jones v. Secretary of Health and Human Services</u>, 945 F.2d 1365, 1368-1369 (6th Cir. 1991). This "substantial evidence" is "such evidence as a reasonable mind shall accept as adequate to

support a conclusion;" it is based on the record as a whole and must take into account whatever in the record fairly detracts from its weight. Garner, 745 F.2d at 387.

One of the detracting factors in the administrative decision may be the fact that the Commissioner has improperly failed to accord greater weight to a treating physician than to a doctor to whom the plaintiff was sent for the purpose of gathering information against his disability claim. Bowie v. Secretary, 679 F.2d 654, 656 (6th Cir. 1982). This presumes, of course, that the treating physician's opinion is based on objective medical findings. Cf. Houston v. Secretary of Health and Human Services, 736 F.2d 365, 367 (6th Cir. 1984); King v. Heckler, 742 F.2d 968, 973 (6th Cir. 1984). Opinions of disability from a treating physician are binding on the trier of fact only if they are not contradicted by substantial evidence to the contrary. Hardaway v. Secretary, 823 F.2d 922 (6th Cir. 1987). These have long been well-settled principles within the Circuit. Jones, 945 F.2d at 1370.

Another point to keep in mind is the standard by which the Commissioner may assess allegations of pain. Consideration should be given to all the plaintiff's symptoms including pain, and the extent to which signs and findings confirm these symptoms. 20 C.F.R. § 404.1529 (1991). However, in evaluating a claimant's allegations of disabling pain:

> First, we examine whether there is objective medical evidence of an underlying medical condition. If there is, we then examine: (1) whether objective medical evidence confirms the severity of the

3

Case: 2:07-cv-00165-GWU Doc #: 11 Filed: 07/09/08 Page: 4 of 12 - Page ID#: 66

07-165 Donna Herald

alleged pain arising from the condition; or (2) whether the objectively established medical condition is of such a severity that it can reasonably be expected to produce the alleged disabling pain.

Duncan v. Secretary of Health and Human Services, 801 F.2d 847, 853 (6th Cir. 1986).

Another issue concerns the effect of proof that an impairment may be remedied by treatment. The Sixth Circuit has held that such an impairment will not serve as a basis for the ultimate finding of disability. Harris v. Secretary of Health and Human Services, 756 F.2d 431, 436 n.2 (6th Cir. 1984). However, the same result does not follow if the record is devoid of any evidence that the plaintiff would have regained his residual capacity for work if he had followed his doctor's instructions to do something or if the instructions were merely recommendations. Id. Accord, Johnson v. Secretary of Health and Human Services, 794 F.2d 1106, 1113 (6th Cir. 1986).

In reviewing the record, the Court must work with the medical evidence before it, despite the plaintiff's claims that he was unable to afford extensive medical work-ups. Gooch v. Secretary of Health and Human Services, 833 F.2d 589, 592 (6th Cir. 1987). Further, a failure to seek treatment for a period of time may be a factor to be considered against the plaintiff, Hale v. Secretary of Health and Human Services, 816 F.2d 1078, 1082 (6th Cir. 1987), unless a claimant simply has no way to afford or obtain treatment to remedy his condition, McKnight v. Sullivan, 927 F.2d 241, 242 (6th Cir. 1990).

Additional information concerning the specific steps in the test is in order.

Step six refers to the ability to return to one's past relevant category of work. Studaway v. Secretary, 815 F.2d 1074, 1076 (6th Cir. 1987). The plaintiff is said to make out a prima facie case by proving that he or she is unable to return to work. Cf. Lashley v. Secretary of Health and Human Services, 708 F.2d 1048, 1053 (6th Cir. 1983). However, both 20 C.F.R. § 416.965(a) and 20 C.F.R. § 404.1563 provide that an individual with only off-and-on work experience is considered to have had no work experience at all. Thus, jobs held for only a brief tenure may not form the basis of the Commissioner's decision that the plaintiff has not made out its case. Id. at 1053.

Once the case is made, however, if the Commissioner has failed to properly prove that there is work in the national economy which the plaintiff can perform, then an award of benefits may, under certain circumstances, be had. E.g., Faucher v. Secretary of Health and Human Services, 17 F.3d 171 (6th Cir. 1994). One of the ways for the Commissioner to perform this task is through the use of the medical vocational guidelines which appear at 20 C.F.R. Part 404, Subpart P, Appendix 2 and analyze factors such as residual functional capacity, age, education and work experience.

One of the residual functional capacity levels used in the guidelines, called "light" level work, involves lifting no more than twenty pounds at a time with frequent lifting or carrying of objects weighing up to ten pounds; a job is listed in this category

5

if it encompasses a great deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls; by definition, a person capable of this level of activity must have the ability to do substantially all these activities. 20 C.F.R. § 404.1567(b). "Sedentary work" is defined as having the capacity to lift no more than ten pounds at a time and occasionally lift or carry small articles and an occasional amount of walking and standing. 20 C.F.R. § 404.1567(a), 416.967(a).

      However, when a claimant suffers from an impairment "that significantly diminishes his capacity to work, but does not manifest itself as a limitation on strength, for example, where a claimant suffers from a mental illness . . . manipulative restrictions . . . or heightened sensitivity to environmental contaminants . . . rote application of the grid [guidelines] is inappropriate . . ." Abbott v. Sullivan, 905 F.2d 918, 926 (6th Cir. 1990). If this non-exertional impairment is significant, the Commissioner may still use the rules as a framework for decision-making, 20 C.F.R. Part 404, Subpart P, Appendix 2, Rule 200.00(e); however, merely using the term "framework" in the text of the decision is insufficient, if a fair reading of the record reveals that the agency relied entirely on the grid. Ibid. In such cases, the agency may be required to consult a vocational specialist. Damron v. Secretary, 778 F.2d 279, 282 (6th Cir. 1985). Even then, substantial evidence to support the Commissioner's decision may be produced through reliance on this expert testimony only if the hypothetical question given to the expert

6

accurately portrays the plaintiff's physical and mental impairments. Varley v. Secretary of Health and Human Services, 820 F.2d 777 (6th Cir. 1987).

**DISCUSSION**

The plaintiff, Donna Herald, was found by an Administrative Law Judge (ALJ) to have "severe" impairments consisting of obesity, degenerative disc disease of the lumbar spine, early degenerative changes of the knees, being status post a September 3, 1999 right hip mass excision and January 28, 2000 re-excision, bilateral carpal tunnel syndrome status post release on right, and a chronic adjustment disorder with anxious and depressed mood. (Tr. 16). Nevertheless, based in part on the testimony of a Vocational Expert (VE), the ALJ determined that the plaintiff retained the residual functional capacity to return to her past relevant work as a clerical worker, and therefore was not entitled to benefits. (Tr. 17-24). The Appeals Council declined to review, and this action followed.

At the administrative hearing, the ALJ asked the VE whether a person of the plaintiff's age of 45, high school education, and work experience could perform any jobs if she were limited to lifting ten pounds occasionally and five pounds frequently, could stand or walk only two hours in an eight-hour day, up to one hour at a time, and then would need to be able to sit for five minutes, could sit a total of eight hours, up to two hours at a time and then would need to be able to stand for five minutes, and had the following additional non-exertional restrictions. (Tr. 394). She: (1) could not crawl, balance, climb ladders, ropes, or scaffolds, or work at

unprotected heights; (2) could not perform firm, forceful grasping with her hands beyond what was needed to lift, carry, push, and pull the weights previously indicated; (3) could occasionally stoop, kneel, crouch, and climb ladders and stairs; (4) was able to understand, remember, and carry out detailed but not complex instructions; and (5) could not interact with the general public, coworkers, or supervisors more than occasionally. (Tr. 394-5). The VE responded that, although the plaintiff could not return to her previous clerical job as she had performed it, she could perform clerical jobs as they were customarily done in the national economy. (Tr. 395). In addition, the VE identified alternative jobs which the hypothetical individual could perform, and provided the numbers in which they existed in the local Cincinnati economy as well as the national economy. (Tr. 395-6).

On appeal, this court must determine whether the hypothetical factors selected by the ALJ are supported by substantial evidence, and that they fairly depict the plaintiff's condition. There is an additional issue in that Mrs. Herald's Date Last Insured (DLI) was March 31, 2005 (Tr. 14), meaning that she had to establish disability prior to this date in order to be entitled to benefits.

The hypothetical mental factors chosen by the ALJ are clearly not supported by substantial evidence. The plaintiff alleged "nerve problems" in her application. (Tr. 68). She testified that she had been depressed and anxious and had been on medication since 2000, did not like to do anything, did not want anyone bothering her, had poor concentration, and cried almost every day. (Tr. 377-9). Medications

8

prescribed by family doctors during the relevant period included the anti-anxiety drug Xanax and the anti-depressants Wellbutrin, Elavil, and Celexa. (E.g., Tr. 191, 205, 229, 314, 323). The ALJ accepted the diagnosis of Dr. Kevin Eggerman, an examining psychiatrist, that Mrs. Herald had a chronic adjustment disorder with anxious and depressed mood. (Tr. 232). Dr. Eggerman also assigned a Global Assessment of Functioning (GAF) score of 55 to 60, reflecting moderate difficulties in social, occupational, or school functioning per the Diagnostic and Statistical Manual of Mental Disorders (4th Ed.--Text Revision), p. 34. In terms of specific restrictions, Dr. Eggerman opined that the plaintiff's ability to respond appropriately to the stress and pressures of a usual work setting was "moderately" limited and she would also have a "mildly to moderately" limited ability to interact appropriately with the public, supervisors, and coworkers. (Tr. 233).

Dr. Eggerman's restrictions are uncontradicted by any examining source. While the hypothetical question does contain restrictions on interacting with the public, coworkers, and supervisors, it says nothing about limitations on withstanding stress and pressure of a usual work setting.

In addition, while state agency psychological reviewers gave opinions, they concluded that the plaintiff would have moderate limitations in certain areas not mentioned in the hypothetical, including responding appropriately to changes in the work setting and in the ability to complete a normal work day and work week without interruptions from psychologically-based symptoms and performing at a consistent

07-165 Donna Herald

pace without an unreasonable number and length of rest periods. (Tr. 255-7, 309-11). While the opinions of the non-examining sources are not necessarily binding, the Commissioner's regulations provide that state agency psychologists are highly qualified professionals who are expert in Social Security Disability evaluations, and their conclusions must be considered as opinion evidence. 20 C.F.R. § 404.1527(f)(2)(i).

In short, none of the opinion evidence supports the ALJ's choice of mental restrictions. Although the plaintiff was found capable of returning to her past work as it is performed in the national economy, it is not clear whether an individual with a limited ability to withstand stress and pressures of <u>usual</u> work activity would be able to do so, in combination with the other restrictions. Therefore, a remand will be required for further exploration of this issue.

The plaintiff raises an additional issue regarding physical restrictions placed by one of her treating family physicians, Dr. David Banks. Dr. Banks started treating the plaintiff in October, 2003 (Tr. 203), and on March 18, 2005, shortly before the DLI, submitted an assessment form stating that the plaintiff's problems were osteoarthritis of the back, knees, and hands, hip pain, and generalized anxiety disorder (Tr. 280). He limited her to lifting no more than two pounds occasionally and nothing frequently and to slightly less than full-time sitting and standing in addition to certain other non-exertional restrictions which were not included in the hypothetical question. (Tr. 280-3). The ALJ rejected the treating physician's

10

limitations due to a lack of objective evidence to support their severity. (Tr. 23). His restrictions are consistent with the opinion of a one-time examiner, Dr. Loraine Glaser, who diagnosed morbid obesity, right thigh pain related to lipoma excision, low back pain with minor degenerative discogenic changes, a traumatic right elbow injury, and hypertension. (Tr. 21, 237). Dr. Glaser had found that the plaintiff weighed 297 pounds at a height of five feet six inches, and stated that obesity was contributing to her symptoms and a significant weight reduction would diminish her complaints. (Tr. 235, 237-8).

Although the ALJ noted the presence of obesity and included this condition as a "severe" impairment, he did not perform an individualized assessment of the impact of obesity on the plaintiff's functioning as required by Social Security Ruling (SSR) 02-01p. SSR 02-01p requires that an assessment be made of the effect obesity has on the individual's ability to perform routine movement and necessary activity within the work environment and an ALJ is required to explain how he reached his conclusions. Id., pp. 6-7. See also Kennedy v. Astrue, 247 Fed.Appx. 761 (6th Cir. 2007). SSR 02-01p also provides that the Commissioner will rarely use "failure to follow prescribed treatment for obesity to deny benefits." Id., p. 9. Merely stating that an obese individual's symptoms would improve if she lost weight does not fulfill the requirements of the ruling.

In the absence of the individualized assessment, the ALJ's rejection of the treating physician's restrictions is problematical. Even if the plaintiff had relatively

minor findings on objective testing, the consequences could have been significantly greater than would be expected in a person of normal weight. Thus, although the evidence in its present state does not mandate an award of benefits based on the treating physician's opinion, his restrictions should be reevaluated in light of SSR 02-01p.

The decision will be remanded for further consideration.

This the 9th day of July, 2008.

**Signed By:**

*G. Wix Unthank*

**United States Senior Judge**